IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOHN W. HARRIS and MILISSA G. HARRIS, | § § § § | CASE NO. 06-30695 CHAPTER 7 |
| DEBTORS | § | |
| BEN B. FLOYD, TRUSTEE, PLAINTIFF | § § § | |
| v. | § | ADVERSARY NO. 06-3472 |
| GREATHOUSE CUSTOM HOMES, LTD. and WILLIAM HARRIS, DEFENDANTS | § § § § | |

## MEMORANDUM OPINION ON
## THE DEFENDANTS' MOTION TO WITHDRAW DEEMED ADMISSIONS

### I. INTRODUCTION

On February 22, 2007, a hearing was held on the Defendants' Motion to Withdraw Deemed Admissions and the Response in opposition thereto filed by the Plaintiff, Ben B. Floyd, the Chapter 7 Trustee assigned to this case (the Trustee). The Court heard testimony from two witnesses, and in addition to considering this testimony, has also considered the oral arguments made by counsel and the case law cited at the hearing. The Court has also conducted its own research. The Court finds that the Motion should be denied. The purpose of this Memorandum Opinion is to set forth the reasons for this decision.

The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52 as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the

extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

1. On July 18, 2006, the Trustee initiated the above-referenced Adversary Proceeding by filing an original complaint against William Harris, the brother of Debtor John W. Harris, and Greathouse Custom Homes, Limited. [Adversary Docket No. 1.]

2. On August 21, 2006, William Harris and Greathouse Custom Homes, Limited (the Defendants) filed an answer to the complaint. [Adversary Docket No. 5.]

3. On August 24, 2006, counsel for the Trustee, Lynn Chuang Kramer (Kramer) and counsel for the Defendants, Stephen Simonsen (Simonsen), submitted an Agreed Scheduling Order to this Court. The Court signed this Order on August 24, 2006, and it was entered on the docket on August 25, 2006. [Adversary Docket No. 11.] The Scheduling Order provides, *inter alia*, that the deadline for completion of discovery is December 30, 2006; that the deadline for filing motions for summary judgment is January 17, 2007; that the deadline for filing responses to motions for summary judgment is January 31, 2007; and that the pretrial conference will be held on March 1, 2007.

4. On September 27, 2006, the Trustee served written discovery on the Defendants. This discovery included requests for admission.

5. Simonsen received the requests for admission and assigned a legal assistant at his firm the task of drafting the answers to these requests.

6. Pursuant to Bankruptcy Rule 7036, which incorporates Federal Rule 36, the Defendants needed to answer or object to the requests for admission by October 27, 2006. The Defendants failed to do so by this deadline.

7. On December 20, 2006, Simonsen, on behalf of each of the Defendants, filed an amended answer. [Adversary Docket Nos. 21, 22.]

8. On December 20, 2006, at approximately 5:00 p.m., Simonsen discovered that no answers to the requests for admission had ever been served on the Trustee or the Trustee's counsel.

9. At the time Simonsen made this discovery, he was about to depart for a vacation. He therefore assigned to an associate attorney at his firm, Claudia Laird (Laird), the task of drafting the answers and serving them on counsel for the Trustee. Neither Simonsen nor Laird called Kramer to inform her that the Defendants would be filing untimely answers to the requests for admission.[1]

10. Laird needed seven days to draft the answers, review them with the Defendants, and then serve them on counsel for the Trustee. The Court finds that Laird served the answers to the requests for admission on December 27, 2006.

---

[1] At the hearing, Simonsen testified that he recollected making a telephone call to Patrick Griffin (Griffin), an attorney who works at the same law firm as Kramer. Simonsen further testified that he called Griffin to discuss settlement of the Adversary Proceeding, but he gave no testimony that he actually spoke with Griffin or, even if he did, that he notified Griffin that the answers to the requests for admission were not timely filed. At the hearing, Kramer noted that Griffin had not signed any of the pleadings on behalf of the Trustee or worked on this particular lawsuit, thereby suggesting that any communication that Simonsen had with Griffin could not be imputed to her. The Court need not address this issue because there was no testimony from Simonsen that he ever actually spoke with Griffin or communicated in any fashion to him that the answers were not timely filed but would eventually be filed. Accordingly, this Court finds that counsel for the Defendant never telephoned or otherwise communicated with any attorney who might represent the Trustee that the answers to the requests for admission had not been timely filed but would eventually be filed.

11. On January 17, 2007, the Trustee filed a Motion for Partial Summary Judgment. [Adversary Docket No. 26.]

12. On January 22, 2007, Laird, on behalf of the Defendants, filed the Motion to Withdraw Deemed Admissions (the Motion). [Adversary Docket No. 27.]

13. On January 23, 2007, Laird, on behalf of the Defendants, filed an Emergency Motion for Continuance. [Adversary Docket No. 30.] This motion requested that the Court extend the deadline for the Defendants to respond to the Motion for Partial Summary Judgment on the grounds that a hearing first needed to be held on the Motion so that the Defendants would know whether, in responding to the Motion for Partial Summary Judgment, the matters set forth in the requests for admission would be deemed admitted.

14. On January 24, 2007, this Court denied the Emergency Motion on the grounds that counsel for the Defendants had failed to provide an order pursuant to Bankruptcy Local Rule 9013(h). [Adversary Docket No. 31.]

15. On January 25, 2007, Laird, on behalf of the Defendants, filed a Second Emergency Motion for Continuance [Adversary Docket No. 32], together with a proposed order granting this motion [Adversary Docket No. 33].

16. On January 30, 2007, a hearing was held on the Second Emergency Motion, and the Court granted this motion and signed an order extending the deadline from January 31, 2007 to March 6, 2007 for the Defendants to file a response to the Trustee's Motion for Partial Summary Judgment. [Adversary Docket No. 38.] At this same hearing, the Court orally continued the pretrial conference from March 1, 2007 to March 15, 2007.

17. On February 2, 2007, the Trustee filed a response opposing the Motion. [Adversary Docket No. 41.]

18. On February 22, 2007, a hearing was held on the Motion and response in opposition thereto. Both Simonsen and Laird testified in support of the Motion. The Trustee called no witnesses. At the close of the hearing, the Court took the matter under advisement.

### III. CONCLUSIONS OF LAW

**A.     Jurisdiction and Venue**

This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. §§ 157(b)(2)(A), (F), (H), and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

**B.     The applicable rules for resolving this dispute are Bankruptcy Rule 7036 and Bankruptcy Rule 9006.**

Bankruptcy Rule 7036 states that Federal Rule 36 applies in Adversary Proceedings. Rule 36(a) sets forth that "A party may serve upon any other party a written request for the admission . . . of the truth of any matters . . . set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . ." Further, Rule 36(a) sets forth that "The matter is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Rule 36(b) states that "Any matter admitted under this rule is conclusively established unless the court on a motion permits withdrawal or amendment of the admission."

In the proceeding at bar, the Trustee served requests for admission on the Defendants on September 27, 2006. The Defendants had 30 days—i.e., until October 27, 2006—to file written

5

answers or objections to these requests. The Defendants failed to do so. Accordingly, each matter in the Trustee's requests for admission is admitted, which means that each of these admitted matters is conclusively established—unless this Court is authorized to allow the Defendants to file their answers late.

Bankruptcy Rule 9006(b)(1) gives this Court the discretion to do so where "the failure to act was the result of excusable neglect." In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), the Supreme Court set forth certain factors for courts to consider in making determinations involving excusable neglect. These factors are: (1) the reason for the delay, including whether it was in the reasonable control of the movant; (2) whether the movant acted in good faith; (3) the danger of prejudice to the non-movant;[2] and (4) the length of the delay and its potential impact on judicial proceedings. While *Pioneer* dealt with excusable neglect within the context of Bankruptcy Rule 9006(b)(1) in a Chapter 11 case concerning the late filing of a proof of claim, there is no reason why the excusable neglect standard articulated in *Pioneer* should not be applied when evaluating a motion to withdraw deemed admissions. Indeed, at least one court within the Fifth Circuit has done so. *Harper v. Albertson's, Inc.*, 2005 WL 2361953 *2 (S.D. Miss. Sept. 26, 2005) (stating: "Pursuant to Rule 36(b), Federal Rules of Civil Procedure, a court may excuse a non-answer and permit a late-filed answer upon proper motion and circumstances showing 'excusable neglect,'" and citing *Pioneer* factors) (citation

---

[2]It was suggested at the hearing that with respect to a motion seeking to enlarge time retroactively under the excusable neglect standard set forth in Bankruptcy Rule 9006(b)(1), the danger of prejudice factor applies only to debtors. This Court disagrees, and case law suggests that in evaluating this factor, the Court should focus on whether the non-movant is prejudiced, regardless of whether the non-movant is the debtor, the trustee, or some party who is neither the debtor or the trustee. *See, e.g., In re Solis*, 1995 WL 311781 (S.D.N.Y. May 19, 1995) (unpublished opinion) (holding that the non-movant, who was the Chapter 13 trustee, and the creditors to whom the trustee would make distributions, would be prejudiced if the order dismissing the debtor's appeal for failure to file a designation of record was vacated and an extension of the debtor's time to designate a record was granted).

omitted). Moreover, many courts have used the excusable neglect standard articulated in *Pioneer* in determining whether a movant who has missed a deadline associated with rules other than Rule 36 should nevertheless be relieved of that deadline. For example, the Fifth Circuit has found that the Supreme Court's application of excusable neglect in *Pioneer* applies to late filed appeals from the bankruptcy court. *Christopher v. Diamond Benefits Life Ins. Co. (In re Christopher)*, 35 F.3d 232, 236 (5th Cir. 1994) (applying *Pioneer* to Bankruptcy Rule 8002 issue); *see also Xuchang Rihetai Human Hair Goods Co., Ltd. v. Hongjun Sun (In re Hongjun Sun)*, 323 B.R. 561, 564 (Bankr. E.D.N.Y. 2005) (explaining that "the nature and extent of the Supreme Court's exposition of the term ['excusable neglect' in *Pioneer*] makes it clear that the meaning attributed to 'excusable neglect' has a broad application to bankruptcy practice and procedure.") In sum, this Court concludes that the factors articulated in *Pioneer* are applicable in determining whether the Defendants have established excusable neglect with respect to the Motion in this proceeding.

### C. Application of the *Pioneer* factors in the proceeding at bar reflects that the Defendants have failed to establish excusable neglect.

The burden is on the Defendants to establish excusable neglect. *See Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988). Here, they have failed to satisfy any of the criteria articulated in *Pioneer*.

#### 1. The reason for the delay, including whether it was in the reasonable control of the movant

In analyzing this factor, this Court should focus on whether the delay was beyond the reasonable control of the person whose duty it was to perform the task. *Pioneer*, 507 U.S. at 395, 394. Here, that person was Simonsen, the attorney-in-charge for the Defendants. Simonsen testified that he timely received the requests for admission; that he assigned them to a legal assistant because

he (i.e., Simonsen) was about to undergo a week-long trial in another court; that the legal assistant failed to complete the assignment and serve the answers on Trustee's counsel; that the legal assistant left his firm to take another job; that Simonsen only discovered this failure approximately eight weeks after the October 27, 2006 deadline had passed; that Simonsen was leaving for vacation when he discovered the problem; that he then assigned the task of drafting and serving the answers to his associate, Laird; and that she then completed the task a week later.

Simonsen's explanation does not rise to the level of showing that the delay was beyond his reasonable control. Simonsen is an experienced attorney who is the partner in charge of his firm. He knows full well that requests for admission are deemed admitted if timely answers are not served within 30 days. By his own testimony, he assigned the task to a legal assistant in mid-October of 2006 because he had a child custody jury trial to handle, and this trial lasted seven days. That means that the trial ended either before or at about October 27, 2006—i.e., the deadline for timely serving the answers to the requests for admissions. It was well within Simonsen's reasonable control to review his legal assistant's work once the jury trial was completed and serve them on a timely basis, particularly given Simonsen's knowledge of the consequences of failing to timely serve them. Indeed, by his own testimony, Simonsen noted that the legal assistant departed from Simonsen's firm soon after the conclusion of the jury trial. These are circumstances that should have caused Simonsen to take extra precaution to ensure that he check on the filing of the answers. If nothing else, after the trial, Simonsen, if he still felt he had to devote all of his time to post-trial motions and matters, should have filed a motion with this Court prior to October 27, 2006 to extend the time for filing the answers. Both Rule 36(a) and Bankruptcy Rule 9006(b)(1) allow for such relief. Instead, Simonsen simply disregarded the entire matter.

In *Pioneer*, this Supreme Court stated that "little weight" should be given to the fact that counsel is experiencing disruption at his law practice at the time a deadline was missed when determining if a party's neglect is excusable. *Pioneer*, 507 U.S. at 398. Further, the Fifth Circuit has recognized that "A busy practice does not constitute excusable neglect." *Draper v. KK Ford, LP*, 196 Fed. Appx. 264, 265 (5th Cir. 2006) (unpublished opinion) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990) (addressing a missed discovery deadline and quoting *MacLaughlin v. City of LaGrange*, 662 F.2d 1385, 1387 (11th Cir. 1981), for the proposition that "a busy practice does not establish 'excusable neglect'"). Here, Simonsen was not even experiencing disruption in his law practice. He simply decided to focus on preparing for and attending the jury trial rather than drafting the answers when they were served on him in late September of 2006. This decision may be justifiable, but Simonsen's failure to turn his attention back to the answers once the trial was over is not: he needed to review the answers for their accuracy and to ensure that they would be timely served upon the Trustee's counsel, particularly given the fact that he had assigned the drafting of the answers to a legal assistant whom Simonsen was responsible for supervising. *See Gill Sav. Ass'n v. Int'l Supply Co.*, 759 S.W.2d 697, 703 (Tex. App.—Dallas 1988, writ denied) (quoting the General Guidelines for the Utilization of the Services of Legal Assistants by Attorneys approved by the Board of Directors for the State Bar of Texas for the following proposition: "The attorney is responsible for the work of the legal assistant and the legal assistant remains, at all times, responsible to and under the supervision and direction of the attorney. The functions of a legal assistant are defined by the attorney responsible for the legal assistant's supervision and direction, and are limited only to the extent that they are limited by law."). His failure to do so was not beyond his control.

Moreover, the circumstances in this proceeding are wholly different from those circumstances where courts have found adequate justification for missing deadlines. *See Pioneer*, 507 U.S. at 398 (holding "dramatic ambiguity" in notification of proof of claim bar date was beyond reasonable control of the person whose duty it was to file the claim); *In re Eagle Bus Mfg., Inc. v. Greyhound Lines, Inc.*, 62 F.3d 730, 739-40 (5th Cir. 1995) (holding that failure to file proof of claim was due in part to confusion or ambiguity and supported finding of excusable neglect).

### 2. Whether the movant acted in good faith

The thrust of Simonsen's testimony on this point is that he acted in good faith because: (a) he trusted his legal assistant; (b) his legal assistant had completed every other task that Simonsen had assigned to him; (c) he (i.e., Simonsen) assigned the task of answering to the legal assistant because Simonsen had to deal with a preferentially-set child custody jury trial in mid-October of 2006; and (d) Simonsen had no indication that his legal assistant would fail to do the assignment. This Court certainly understands Simonsen's argument and believes that it has merit to a certain extent. However, whether Simonsen acted in good faith should also be analyzed with an eye towards what action he took after the preferentially-set jury trial was completed.

Unfortunately for Simonsen, his post-trial behavior reflects an absence of good faith. First, as already noted, he failed to file a motion to extend the deadline prior to the expiration of the October 27, 2006 deadline for filing answers. Second, once Simonsen discovered the problem on December 20, 2006, he failed to communicate with Kramer, or, for that matter, any other attorney at Kramer's firm, about this particular problem. He could have—and should have—immediately called Kramer, or someone at her firm, and made them aware of the problem and then requested an retroactive extension of the deadline. If the Trustee had agreed not to challenge late-filed answers,

then the entire matter would have been resolved. However, even if the Trustee had refused such a request, at least the Trustee would have known that the Defendants were aware of their problem and would probably be seeking relief from this Court to withdraw the deemed admissions. Had the Trustee had this information, he would probably have held off spending time and attorney's fees filing the Motion for Partial Summary Judgment on January 17, 2007.

Third, Simonsen not only failed to contact the Trustee's counsel; he failed to immediately file the Motion to Withdraw Deemed Admissions. Instead, he sat idly by for another 23 days (i.e., between December 20, 2006—the date he discovered the problem—and January 22, 2007—the date he filed the motion) and allowed the Trustee to spend time and attorney's fees filing his Motion for Partial Summary Judgment on January 17, 2007. Simonsen, who signed the Agreed Scheduling Order, knew that the deadline for filing motions for summary judgment was January 17, 2007. Possessed of this knowledge, Simonsen should have filed—or instructed Laird to file—the Motion as soon as possible after December 20, 2006 so as to afford the Trustee the opportunity to decide whether to spend time and attorney's fees on drafting and filing his Motion for Partial Summary Judgment. By waiting until five days after the filing of the Trustee's Motion to file the Defendants' Motion to Withdraw Deemed Admissions, Simonsen caused the Trustee to spend time and money filing a pleading which cannot be prosecuted if this Court grants the relief sought by Simonsen in the Defendants' Motion. Such laying behind the log hardly constitutes good faith.

Fourth, by waiting until January 22, 2007 to file the Motion, Simonsen found himself also having to file an Emergency Motion to extend the January 31, 2007 deadline for the Defendants to respond to the Trustee's Motion for Partial Summary Judgment because he could not properly respond to the Trustee's motion until he knew whether the Court would allow the Defendants to

escape from the deemed admissions. Thus, Simonsen's failure to file the Motion immediately after the December 20, 2006 discovery has unnecessarily multiplied the litigation in this Adversary Proceeding. The fact that the first Emergency Motion was dismissed for failure to comply with Bankruptcy Local Rule 9013(h) does nothing to ameliorate the situation.

All in all, the conduct of Simonsen and Laird does not support a finding that the Defendants have acted in good faith. While the Defendants themselves have taken no inappropriate action, their attorneys have woefully failed to take action. Simonsen and Laird, as attorneys for the Defendants, are the agents of their clients, and the Defendants are bound by the actions of their attorneys. *Pioneer*, 507 U.S. at 396; *Phillips ex rel. Estate of Fullingham v. First Nat'l Bank of Weatherford*, 258 F. Supp. 2d 501, 506 n.8 (N.D. Tex. 2002) (citing *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir. 1995)). Accordingly, because Simonsen and Laird have not acted in good faith, this Court finds that the Defendants have not shown the necessary good faith required by *Pioneer*.

### 3. The danger of prejudice to the Trustee, as non-movant

The Trustee will be prejudiced in three respects if this Court grants the Motion. First, the Trustee will have to withdraw his Motion for Partial Summary Judgment because the Defendants answers, if allowed, deny all of the requests for admission. Thus, the Trustee will have needlessly spent time and attorney's fees on this particular motion. Second, because the deadline for filing Motions for Summary Judgment will have expired under the Agreed Scheduling Order, the Trustee will not be able to file another such motion. Third, because the deadline for conducting discovery will have passed under the Agreed Scheduling Order, the Trustee will be unable to take any

discovery about the matters which the Defendants deny in their proposed answers to the requests for admission.³ Thus, the Trustee will be "flying blind" at trial on these particular issues.

The Defendants' response to these problems is that the discovery deadline and summary judgment deadline can be extended. There are two major obstacles to this approach. First, the Trustee does not want further delay. And, he is well justified in his position. The goal in a Chapter 7 proceeding is "prompt closure and distribution of the debtor's estate." *Pioneer*, 507 U.S. at 389. This Chapter 7 case was initiated on February 23, 2006, so it has already been pending for over one year. Each day that this Adversary Proceeding remains pending is another day that the Trustee cannot make a final distribution and that this Chapter 7 case must remain open. Such delay is contrary to the goal of swift administration of a Chapter 7 estate.

Second, the deadlines for this Adversary Proceeding were agreed to by the parties. Public policy dictates that courts should enforce the deadlines set forth in agreed orders unless all parties agree to extend these deadlines. This is particularly so in bankruptcy cases, where agreed orders are commonplace given the voluminous motion practice in this field. Agreed orders constitute the grease which lubricates the wheels of the bankruptcy process; and if the deadlines in agreed orders can be easily changed by less than all of the parties, whatever efficiency presently existing in the system will be undermined. The circumstances in the instant Adversary Proceeding do not come within hailing distance of justifying extending discovery and summary judgment filing deadlines over the objection of the Trustee.

---

³Attached to the Motion to Withdraw Deemed Admissions are the proposed answers to the requests for admission. If this Court were to grant the Motion, these proposed answers would become the "live" answers because the matters would no longer be deemed admitted and therefore conclusively established.

All in all, granting the Motion would not only prejudice the Trustee in this particular lawsuit; it would be harmful to the bankruptcy system in general.

### 4. The length of the delay and its potential impact on judicial proceedings

The answers to the requests for admission were filed on December 27, 2006—which was 61 days after the deadline set forth in Rule 36(a). In other words, the Defendants took 91 days to respond rather than the 30 days allows under Rule 36(a). This fact, in and of itself, allows this Court to conclude that the length of delay is substantial. Moreover, the answers were filed three days before the discovery deadline of December 30, 2006, thereby depriving the Trustee of conducting any discovery on the matters that the Defendants denied. This additional fact supports this Court's conclusion that the length of delay is significant and fails to satisfy the *Pioneer* test.

Moreover, if this Court grants the Motion and allows withdrawal of the deemed admissions, the resulting impact on the judicial proceedings pending in this Court will be entirely negative. If the Court maintains the schedule set forth in the Agreed Scheduling Order, then the Trustee will be prejudiced because he will not have had an opportunity to conduct discovery relating to the matters which the Defendants deny. Conversely, if the Court extends the deadlines set forth in the Agreed Scheduling Order to allow the Trustee to conduct additional discovery and file additional motions for summary judgment, there will be further delay in adjudicating this lawsuit, which in turn will further delay distributing assets of the estate and closing this case. Moreover, the Trustee will have needlessly expended time and fees on the pending Motion for Partial Summary Judgment, and the payment of such fees would assuredly come at the expense of unsecured creditors in this case.

In sum, the Defendants fail to satisfy their burden on this fourth *Pioneer* factor.

    **D.**    **Even if the excusable neglect standard set forth in Bankruptcy Rule 9006(b)(1) is inapplicable, the traditional test outside of the bankruptcy context for analyzing a motion to withdraw deemed admissions also supports a finding that the Defendants' Motion should be denied.**

If this lawsuit were pending in federal district court absent any bankruptcy, the Defendants' Motion to Withdraw Deemed Admissions would be analyzed based upon a two-prong test that focuses on: (1) whether the presentation of the merits will be subserved by allowing the withdrawal; and (2) whether the party that obtained the admissions will be prejudiced in its presentation of the case by the withdrawal. *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991). This Court believes that because the pending lawsuit was filed in this Chapter 7 case, Bankruptcy Rule 9006(b)(1) governs the analysis as to whether the Defendants' Motion should be granted. However, if this Court is incorrect, then the analysis set forth in *AAA Legal Clinic* nevertheless leads this Court to the same conclusion that the Motion should be denied.

The Court comes to this conclusion for two reasons. First, the second element cannot be satisfied. As already discussed, if this Court grants the Motion, the Trustee will be prejudiced in three distinct respects. Second, even if the Defendants could satisfy both elements, this Court still has discretion to deny the Motion. *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001) (quoting *United States v. Kasuboski*, 834 F.2d 1345, 1350 n.7 (7th Cir. 1987) ("[R]ule 36(b) allows withdrawal of admissions if certain conditions are met and the district court, in its discretion, permits the withdrawal."); *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2nd Cir. 1983) ("Because the language of [Rule 36(b)] is permissive, the court is not required to make an exception to Rule 36 even if both the merits and the prejudice issues cut in favor of the party seeking the exception to the rule."), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34, 108

15

S. Ct. 1677, 100 L. Ed. 2d 115 (1988)). Given the circumstances in the proceeding at bar, particularly the complete failure of Simonsen and Laird to contact the Trustee after discovering on December 20, 2006 that the answers had not been served as well as their delay in filing the Motion until after the Trustee had filed his Motion for Partial Summary Judgment, this Court would exercise its discretion and deny the Motion.

## IV. CONCLUSION

In *Christopher*, the Fifth Circuit noted that the Supreme Court in *Pioneer* stated that "excusable neglect at bottom is an equitable consideration 'taking into account all relevant circumstances surrounding the party's omission,'" including the factors set forth in *Pioneer*. *Christopher*, 35 F.3d at 236 (quoting *Pioneer*, 507 U.S. at 395). In the proceeding at bar, the equities weigh almost entirely in favor of the Trustee. For these reasons, the Defendants' Motion to Withdraw Deemed Admissions must be denied. An order to this effect will be entered on the docket simultaneously with the entry on the docket of this Memorandum Opinion.

Signed on this 26th day of February, 2007.

_____
Jeff Bohm
U.S. Bankruptcy Judge